RECEIVED

JUL 2 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

IN RE: ALL ASSETS HELD FOR THE )
BENEFIT OF AMAZING ASIA )
MANAGEMENT LIMITED, PO-HSIEN LU, )
CHIU-FENG HSU, OR TSUNG-CHE HSU IN )
ACCOUNTS NOS. 626003095, 6268007634, )
6268007635, 6268007636, 6268007637, )
6268007638, 6268007672, 6268007673, )
6268007694, 6268007731, 6268007762 AT FAR )
EAST NATIONAL BANK, LOS ANGELES, )
CALIFORNIA. )
)

**Misc. No.**

Case: 1:08-mc-00491
Assigned To : Kennedy, Henry H.
Assign. Date : 7/28/2008
Description: Miscellaneous

---

### EX-PARTE APPLICATION OF THE UNITED STATES FOR
### A RESTRAINING ORDER PURSUANT TO 28 U.S.C. § 2467(d)(3)(B)(ii) AND
### STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

The United States of America, by and through its undersigned attorneys, respectfully

requests that this Court issue a Restraining Order pursuant to 28 U.S.C. §§ 2467(d)(3)(A),

(d)(3)(B)(ii), and 18 U.S.C. § 983(j) to enforce a foreign restraining order issued by the Public

Prosecutor of the Republic of China ("Taiwan") to freeze assets held for the benefit of Po-Hsien

Lu, Chiu-feng Hsu, Tsung-Che Hsu, and Amazing Asia Management Limited in connection with

investigation and prosecution of illegal gambling offenses in Taiwan.  In accordance with U.S.

obligations under an international agreement providing for mutual legal assistance between the

United States and Taiwan, this Application seeks the restraint of assets located in the United

States in order to preserve their availability in anticipation of receipt of a request to enforce a

final judgment of forfeiture from the Taiwanese Court pursuant to 28 U.S.C. § 2467(b).

## I.  JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2467.  Venue is

proper in this Court pursuant to 28 U.S.C. § 2467(c)(2)(B), which provides, in relevant part, that

"venue shall lie in the district court for the District of Columbia . . . ." *Id.*

## II.  APPLICATION

The United States seeks a Restraining Order to preserve the following property for

forfeiture (the "Property"):

> All assets held for the benefit of Amazing Asia Management Limited, Po-Hsien Lu, Chiu-Feng Hsu, or Tsung-Che Hsu in Account Nos. 626003095, 6268007634, 6268007635, 6268007636, 6268007637, 6268007638, 6268007672, 6268007673, 6268007694, 6268007731, 6268007762 at Far East National Bank, Los Angeles.

These assets are subject to a restraining order issued by the Taiwanese Public Prosecutor on July

11, 2008, in connection with the investigation and prosecution of Po-Hsien Lu ("Lu"), Tsung-

Che Hsu ("Hsu") and their associates for acts of illegal gambling offenses in violation of

Taiwanese law.

This Court is empowered to "register and enforce a restraining order that has been issued

by a court of competent jurisdiction in the foreign country and certified by the Attorney General

pursuant to" 28 U.S.C. § 2467(b)(2).  Here, a restraining order was issued by the Taiwanese

Public Prosecutor, which has statutory authority for the issuance of such orders and is a proper

authority to issue such orders under Taiwanese law.  The Acting Assistant Attorney General has

properly certified the Taiwanese order for enforcement in the interest of justice on July 22, 2008.[1]

---

[1] The Attorney General delegated this authority to certify foreign orders for enforcement under section 2467 to the Assistant Attorney General for the Criminal Division pursuant to order number 2820-2006.  Att'y Gen. Order 2820-2006, *available at* http://www.usdoj.gov/ag/readingroom/ag2820-2006.pdf

A true and correct copy of the Taiwanese restraining order and an English translation are attached

as Exhibit A, and a true and correct copy of the Acting Assistant Attorney General Certification

is attached as Exhibit B.

Accordingly, the United States respectfully requests that this Court issue a Restraining

Order pursuant to 28 U.S.C. § 2467(d)(3)(B)(ii) and 18 U.S.C. § 983(j) and that such Order

remain in place until proceedings related to the forfeiture of these assets are concluded in courts

of Taiwan. A proposed order is attached.

## III.    STATEMENT OF POINTS AND AUTHORITIES

Under 28 U.S.C. § 2467(d)(3)(B)(ii), this Court has the authority to enforce a foreign

restraining order issued in connection with forfeiture proceedings in another country, provided

that the U.S. Assistant Attorney General has certified a request from the foreign nation for

enforcement of the order in the interest of justice. Because each of the statutory requirements for

enforcement have been met, this Court should issue the requested restraining order pending the

receipt of a request for the enforcement of a final order of forfeiture issued by a Taiwanese Court.

### A.    FACTUAL BACKGROUND

On July 15, 2008, the Taiwan authorities transmitted a formal legal assistance request to

the U.S. Department of Justice's Office of International Affairs seeking the restraint of the

property of Amazing Asia Management Limited ("Amazing Asia") and Hsu in the United States

in accordance with the Agreement on Mutual Legal Assistance in Criminal Matters Between the

American Institute in Taiwan and the Taipei Economic and Cultural Representative Office in the

3

United States, which entered into force on March 26, 2002.[2]  Taiwan's Office of the ChiaYi

District Prosecutor issued a restraining order on July 11, 2008, against bank accounts in the

United States with a value of approximately $7,000,000, which the Government of Taiwan has

requested be enforced.[3]  The United States now seeks to give effect to the order, and in support of

that request, alleges the following facts:

This request arises from a Taiwanese investigation regarding illegal gambling in violation

of Articles 267 and 268 of the Taiwanese Criminal Code allegedly carried out by Lu and Hsu.

Lu, a Taiwanese national, with his co-defendant, Cheng-Tsung Wang ("Wang") operated

an illegal gambling business, Wang's Gambling House ("WGH"), at Wang's residence in Taiwan

since 2002.  WGH, owned by Lu, Wang and Hsu, operated at a number of other locations in

addition to Wang and Lu's residences.  WGH had various illegal gambling activities with a focus

on a type of lottery called "LiuHeCai".  It hired nine employees and equipped itself with modern

---

[2] The Agreement is attached as Exhibit C. The American Institute in Taiwan and the Taipei Economic and Cultural Representative Office in the United States are the legal representatives of the two jurisdictions for purposes of mutual legal assistance.  As set forth in the Federal Register, "Cultural, commercial and other unofficial relations between the American people and the people of Taiwan are maintained on a non-governmental basis through the American Institute in Taiwan (AIT), a private nonprofit corporation created under the Taiwan Relations Act (Pub. L. 96-8; 93 Stat. 14). The Coordination Council for North American Affairs (CCNAA) was established as the nongovernmental Taiwan counterpart to AIT. On October 10, 1995, the CCNAA was renamed the Taipei Economic and Cultural Representative Office in the United States (TECRO). [ ] Under section 12 of the Act, agreements concluded between AIT and TECRO (CCNAA) are transmitted to the Congress, and according to sections 6 and 10(a) of the Act, such agreements have full force and effect under the law of the United States." Agreements In Force as of December 31, 2007, Between the American Institute in Taiwan and the Taipei Economic and Cultural Representative Office in the United States, 73 Fed. Reg. 29154-01 (May 20, 2008).

[3] Pursuant to Article 136 of the Taiwanese Code of Criminal Procedure, the Public Prosecutor is authorized to order the restraint of property in the investigative stage that will be subject to forfeiture.

transmission tools, such as telephones and fax machines for the purpose of receiving bets from 25 other gambling places also owned and run by Lu, Wang and Hsu. As part of its illicit activities, WGH illegally operated a LiuHeChai lottery in Taiwan. This lottery in Taiwan followed the numbers drawn more publicly in a Hong Kong LiuHeChai lottery, however, WGH issued its own lottery tickets, paid out winnings, and otherwise operated a parallel underground lottery in Taiwan in violation of Taiwanese law. According to witness testimony, the lottery conducted at WGH was drawn three to four times a week. The amount of money involved in each drawing could be as high as one hundred million Taiwan Dollars (NTD) (the equivalent of approximately US$ 3,289,897). Additionally, Lu, Wang and Hsu financed and managed the business of WGH. As several witnesses testified, Lu was responsible for financing and accounting while Wang took care of taking and paying bets at gambling sites. The operation of the WGH gambling enterprise violated Taiwan's laws and led to the conviction of Lu and Hsu.

On March 9, 2006, the Taiwanese Police searched Lu's residence, and the criminal activities were discovered. The police seized NTD 528,000,000 in cash and 383 checks with a face value amounting to NTD 1,790,000,000 at Lu's residence. A further search revealed that the proceeds derived from the illegal gambling activities were transmitted to three bank accounts in the name of Amazing Asia located in Hong Kong.

Investigations have further revealed that Amazing Asia was incorporated in the British Virgin Islands on August 20, 2000, with three co-founders, Lu, Hsu and Chiu-Feng Hsu. Amazing Asia has several accounts at Far East National Bank in the United States including a money market account, Account No. 626003095 with a current balance of US$ 6,545, as well as ten Time Certificates of Deposit (TCD) in the name of Amazing Asia, Account Numbers

6268007634, 6268007635, 6268007636, 6268007637, 6268007638, 6268007672, 6268007673, 6268007694, 6268007731 and 6268007762. The ten TCD accounts will mature between July 14, 2008, and August 13, 2008, and have a total value of US$ 7,045,604. Amazing Asia has three authorized signatories for these accounts: Lu, Hsu, and Chiu-Feng Hsu. Chiu-Feng Hsu is Lu's spouse and Hsu's sister, and the sole share holder of Amazing Asia.

Lu and Hsu were convicted by the Taiwan Chiayi District Court, and Lu appealed his conviction to the Taiwan High Court, Tainan Division. The appellate court upheld the conviction and sentenced him to two years imprisonment. Hsu is a fugitive who is currently on the wanted list of the Taiwan ChiaYi District Court. The sentence also ordered the forfeiture of the profits of the gambling offenses, including approximately US$ 188,796,835.77 held in three different currencies and most of which has not been recovered.

### B.    ARGUMENT

1.    This Court has Authority to Enforce Foreign Restraining Orders that the Assistant Attorney General has Certified for Enforcement

Pursuant to 28 U.S.C. § 2467, Federal Courts are authorized to enforce a foreign judgment of forfeiture obtained in connection with forfeiture proceedings in a foreign nation, upon application of the United States seeking enforcement, "as if the judgment had been entered by a court in the United States." 28 U.S.C. § 2467(c)(1). This provision enables the United States to comply with obligations under treaties and other international agreements requiring it to freeze, seize, and forfeit proceeds and instrumentalities of foreign crimes. Additionally, reciprocity is a basic tenet in international cooperation and if the United States is to expect

6

foreign courts to enforce orders issued by U.S. courts, it must have legislation to render reciprocal assistance to foreign tribunals.

    2.    <u>The Requirements For Recognizing a Foreign Restraining Order Have Been Met</u>

As set forth below, four elements must be met for the enforcement of a foreign restraining order under § 2467: (1) the United States and the foreign jurisdiction must be parties to an international agreement providing for mutual forfeiture assistance; (2) the conduct giving rise to forfeiture under foreign law must constitute conduct that would give rise to forfeiture if committed in the United States; (3) the foreign restraint order must have been issued by a court of competent jurisdiction in the foreign nation; and (4) the Attorney General must have certified the request for enforcement of the order in the interest of justice. 28 U.S.C. § 2467(a)(1)-(2), (d)(3). Because each of these elements is met, this Court should enforce the Taiwanese order and issue the requested U.S. Restraining Order.

Pursuant to 28 U.S.C. § 2467, a final order of forfeiture can be enforced if it is the subject of a request from a foreign nation, defined in the statute as including "a foreign jurisdiction with which the United States has a treaty or other formal international agreement in effect providing for mutual forfeiture assistance." 28 U.S.C. § 2467(a)(1). The United States and Taiwan, through their respective legal representatives, are parties to the Agreement on Mutual Legal Assistance in Criminal Matters Between the American Institute in Taiwan and the Taipei Economic and Cultural Representative Office in the United States. Because Article 6 of the MLAA provides for mutual assistance in forfeiture matters, the first criterion for issuance of a Restraining Order under Section 2467 is met.

7

Second, to be enforceable, a final foreign forfeiture judgment must order the forfeiture of property based on conduct that "would constitute a violation or offense for which property could be forfeited under Federal law if the offense were committed in the United States." 28 U.S.C. § 2467(a)(2)(A). This dual "forfeitability" requirement ensures that a final judgment sought for enforcement is consistent with the type of offenses for which Congress has authorized forfeiture under U.S. law. Here, the Taiwanese restraining order was issued in connection with the investigation and prosecution of conduct constituting illegal gambling offenses in violation of Articles 267 and 268 of the Taiwanese Criminal Code. The proceeds of such offenses are subject to forfeiture under Article 38 of the Taiwanese Criminal Code. Additionally, the request describes conduct that, had it occurred in the United States, would constitute violations of 18 U.S.C. §§ 1955 (prohibition of illegal gambling business)[4]. Property involved in such U.S. offenses is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) as the proceeds of "specified unlawful activity." *See* 18 U.S.C. §§1956(c)(7)(A) and 1961(1)(A). As a result, the second criterion for enforcement is satisfied because the conduct would give rise to forfeiture in both countries.

Third, pursuant to Article 136 of the Taiwanese Code of Criminal Procedure, the Public Prosecutor is authorized to order the restraint of property in the investigative stage that will be subject to forfeiture.[5] While this process differs from U.S. procedure, the Public Prosecutor in

---

[4] "Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. §1955.

[5] The Taiwanese Ministry of Justice explained that Article 136 of the Taiwanese Code of Criminal Procedure provides that "[a] seizure shall be executed by a public prosecuting affairs official, judicial police officer, or judicial policeman, unless it is executed by a judge or public

Taiwan has the ability to freeze or restrain assets in the course of a criminal investigation. In addition, a court of competent jurisdiction, the Taiwan ChiaYi District Court, already convicted two of the account signatories for the assets in California in connection with their illegal gambling operation and ordered forfeiture of property held in the name of Amazing Asia and Hsu. The Taiwan High Court, Tainan Division sustained the convictions and the order of forfeiture.[6] Although 28 U.S.C. §2467(d)(3)(B)(ii) authorizes enforcement of a restraining order issued by "a court of competent jurisdiction", enforcement of the Taiwanese order would be appropriate because, according to the Taiwanese Ministry of Justice, the Public Prosecutor, not the court, is the authority that is properly authorized to issue restraining orders at the investigative stage pursuant to the Taiwanese Code of Criminal Procedure. Indeed, the issuance of restraint orders by prosecutorial authorities, rather than a court, is a common practice among civil law jurisdictions, such as Taiwan. Accordingly, while the order was issued by a prosecutor, the prosecutor exercised statutory authority to preserve the jurisdiction of the court to issue a final order of forfeiture for enforcement against assets located in the United States.

Fourth, the Taiwanese restraining order was certified by the Acting Assistant Attorney General on July 22, 2008 *See* Exhibit B. The Acting Assistant Attorney General determined that enforcement of the attached Taiwanese restraining order is in the interest of justice. *See*

---

prosecutor."

[6] The United States seeks enforcement of the Taiwanese restraining order at this time rather than the order of forfeiture issued in connection with the conviction of Lu and Hsu because the Public Prosecutor is seeking clarification from the Taiwanese court of the scope of the forfeiture order. Alternatively, Taiwan has represented that the assets may be sought for forfeiture through further prosecution of conduct in the on-going investigation.

28 U.S.C. § 2467(b)(2). Such determinations are not subject to review. *Id.* Thus, the fourth criterion for enforcement is met, and ample justification exists for enforcement of the attached Taiwanese restraining order in the United States.

## IV.    CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court

enforce the Taiwanese restraining order, consistent with U.S. obligations under the MLAA

between the Governments of the United States and Taiwan, by entering the attached restraining

order against the captioned property pursuant to this Court's authority under 28 U.S.C.

§ 2467(d)(3)(B)(ii) and 18 U.S.C. § 983(j).  The United States further requests that it be

permitted to serve the Order by facsimile transmission to the affected financial institution.  The

United States will promptly request, through the appropriate legal assistance channels, that those

individuals and entities with an apparent interest in the property be provided with notice and a

copy of this Court's Order.

Respectfully submitted,

RICHARD WEBER
CHIEF, ASSET FORFEITURE AND MONEY
LAUNDERING SECTION

LINDA M. SAMUEL  (DC Bar #388970)
Deputy Chief
DANIEL CLAMAN (Virginia Bar #36482)
Assistant Chief
Asset Forfeiture and Money
     Laundering Section
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W., 10th Floor
Washington, D.C. 20530
Telephone:  (202) 514 1263

Attorneys for Applicant
UNITED STATES OF AMERICA

11

# EXHIBIT A

宙股

# 臺灣嘉義地方法院檢察署檢察官扣押命令

97年度他字第994號

被　　　告　AMAZING ASIA MANAGEMENT LTD
　　　　　　　設臺中市西區五權西4街27號11F之2

代　表　人
兼　被　告　盧伯賢　男　49歲（民國48年3月25日生）
　　　　　　　籍設高雄縣大寮鄉大明街104號
　　　　　　　現住臺中市西區五權西4街27號11F之
　　　　　　　2（現於臺灣高雄第二監獄執行中）
　　　　　　　身分證統一編號：Q120281005號

　　　許秋鳳　女　44歲（民國52年10月15日生）
　　　　　　　籍設臺中市南屯區萬和路1段33號之6
　　　　　　　現住臺中市西區五權西4街27號11F之
　　　　　　　身分證統一編號：Q221181122號

　　　許聰哲　男　40歲（民國56年9月11日生）
　　　　　　　住嘉義縣新港鄉中庄村18鄰中庄160
　　　　　　　巷34號（通緝中）
　　　　　　　身分證統一編號：Q121181488號

一、被告盧伯賢因犯賭博罪，經臺灣高等法院臺南分院以96年度
　　上易字第619號判決判處有期徒刑4年，減為有期徒刑2年，
　　並於刑之執行完畢或赦免後，令入勞動場所強制工作3年；
　　被告許聰哲因賭博案件，經臺灣嘉義地方法院通緝中；盧冠
　　廷因犯賭博罪，經臺灣高等法院臺南分院以96年度上易字第
　　619號判決判處有期徒刑1年，減為有期徒刑6月，被告盧伯
　　賢犯罪所得美金1億8,879萬6,835.77元應與被告許聰哲及盧
　　冠廷等人連帶沒收。

二、被告盧伯賢、許秋鳳及許聰哲共同開設AMAZING ASIA MANAG
　　EMENT LTD，該公司在BANK SINOPAC HONG KONG BRANCH、
　　CHINATRUST COMMERCIAL BANK,LTD HONG KONG BRANCH等銀行
　　之存款，業經臺灣高等法院臺南分院以上開判決認定為被告

　　　　盧伯賢之犯罪所得，應與被告許聰哲及盧冠廷等人連帶沒收
　　　　。

三、上列被告AMAZING ASIA MANAGEMENT LTD、盧伯賢、許秋鳳
　　　及許聰哲等在Far East National Bank帳戶內之存款（
　　　Account Number：626003095、6268007634～6268007638、
　　　6268007672、6268007673、6268007694、6268007731、6268
　　　007762），疑為被告盧伯賢之犯罪所得，依刑事訴訟法第13
　　　3條第1項規定，應予扣押之

中　華　民　國　97　年　　　月　　　日
　　　　　　　檢　察　官　王　輝　興

## Seizure Order

Issued by: Taiwan Chiayi District Prosecutors Office
Date: July 11, 2008
Case No.: 97-Ta-994

Defendant:
**AMAZING ASIA MANAGEMENT LTD**
Domicile: 11F-2, No. 27, Wu Chuan 4th Street, West Area, Taichung

Representatives and Defendants:
**Lu, Po-Hsien**
Male, 49 years old (Date of Birth: March 25, 1959)
Domicile: No. 104, Ta-Ming Street, Ta Liao County, Kaohsiung
Residence: 11F-2, No. 27, Wu Chuan 4th Street, West District, Taichung (He is
serving his time in Kaohsiung 2nd Prison)
ID No. Q120281005

**Hsu, Chiu-Feng**
Female, 44 years old (Date of Birth: October 15, 1963)
Domicile: No. 33-6, Section 1, Wan-Ho Road, Nan-Tun District, Taichung
Residence: 11F-2, No. 27, Wu Chuan 4th Street, West District, Taichung
ID No.: Q221181122

**Hsu, Tsung-Che**
Male, 40 years old (Date of Birth: September 1, 1967)
Domicile: No. 34, Lane 160, Chung-Chuang, Hsin Kang County, Chiayi
(wanted)
ID No.: Q121181488

1.  The defendant Lu, Po-Hsien is sentenced to 4 years imprisonment for
    gambling offence, which is deducted 2 years in accordance with the Act
    on Sentence Reduction, and shall be committed to a labor establishment
    to perform compulsory labor for three years after serving his time in jail per
    Judgment No. 96-Shang-Yi-619 by the Taiwan High Court, Tainan Branch.
    The defendant Hsu, Tsung-Che is currently on the wanted list of the
    ChiaYi District Court. Lu, Kuang-Ting, the nephew of Lu, Po-Hsien is
    sentenced to one year imprisonment which is deducted 6 months in

accordance with the Act on Sentence Reduction per the same judgment. The proceeds of crime of Lu, Po-Hsien amounts to USD0.1 billion 88 million 790 thousand and 6 thousand 8 hundred and thirty-five dollars 77 cents should be confiscated jointly with the assets of Hsu Tsung-Che and Lu, Kuang-Ting.

2.  The defendants, Lu, Po-Hsien, Hsu. Chiu-Feng and Hsu, Tsung-Che are the co-founders of Amazing Asia Management Limited. The deposit of the said company in Bank Sinopac, Hong Kong Branch, Chinatrust Bank Ltd, Hong Kong Branch are considered the proceeds of crime per the same judgment and should be confiscated jointly with Hsu, Tsung-Che and Lu, Kuang-Ting.

3.  It is highly suspected that the deposit of the defendants Amazing Asia Management Ltd., Lu, Po-Hsien, Hsu Chiu-Feng and Hsu Tsung-Che in the Far East National Banks (Account numbers: 626003095, 6268007634~6268007638, 6268007672, 6268007673, 6268007694, 6268007731 and 6268007762) is the proceeds of crime derived from Lu, Po-Hsien's gambling offense. Accordingly, the above-mentioned accounts should be seized in accordance with Article 133, Section 1 of the Code of Criminal Procedure of the Republic of China.

Prosecutor: Wang Hui-Hsing

Seal of the Taiwan ChiaYi District Prosecutors Office

EXHIBIT B

## ACTING ASSISTANT ATTORNEY GENERAL DECISION

**DECISION:**

In accordance with 28 U.S.C. § 2467(b)(2) and the Attorney General's delegation of authority, Number 2820-2006, to the Assistant Attorney General for the Criminal Division, I hereby find that it is in the interest of justice to CERTIFY the request of the Government of the Republic of China (Taiwan) for enforcement of the July 11, 2008, order issued by the Taiwanese Public Prosecutor to restrain assets of Amazing Asia Management Limited and Tsung-Che Hsu. The Taiwanese Public Prosecutor is a competent authority with statutory authority to issue restraining orders. A copy of the Taiwanese order and an English translation are attached.

_____
**Matthew W. Friedrich**
**Acting Assistant Attorney General**
**Criminal Division**

_____
**Date** 7/22/08

EXHIBIT C

TABLE OF CONTENTS

Article 1 ............................. General Definitions

Article 2 ........................... Scope of Assistance

Article 3 ...................... Designated Representatives

Article 4 ...................... Limitations on Assistance

Article 5 ................... Form and Contents of Requests

Article 6 .......................... Execution of Requests

Article 7 ...................................................... Costs

Article 8 ........................... Limitations on Use

Article 9 .......................... Testimony or Evidence
                          in the Territory Represented
                          by the Requested Party

Article 10 ......... Records of the Territories Represented
                          by the Parties

Article 11 ................. Transfer of Persons in Custody

Article 12 ......... Testimony in the Territory Represented
                          by the Requesting Party

Article 13 ..................... Location or Identification
                          of Persons or Items

Article 14 ...........................Service of Documents

Article 15 ...........................Search and Seizure

Article 16 ............................... Return of Items

Article 17 ........... Assistance in Forfeiture Proceedings

Article 18 ............ Compatibility with Other Agreements

Article 19 ................................. Consultation

Article 20 ............................. Entry into Force;
                          Termination

The American Institute in Taiwan

and

The Taipei Economic and Cultural Representative Office
in the United States,

Desiring to improve the effective cooperation of the law
enforcement authorities of the territories represented by either
Party through mutual legal assistance in criminal matters on the
basis of mutual respect, reciprocity, and mutual benefit,

Have agreed as follows:

## Article 1

### General Definitions

1.  For the purposes of this Agreement, unless the context otherwise requires:

(1)  The term "AIT" means the American Institute in Taiwan, a nonprofit corporation incorporated under the laws of the District of Columbia pursuant to the Taiwan Relations Act of April 10, 1979, Public Law 96-8 (22 U.S.C. §§ 3301 et seq.);

(2)  The term "TECRO" means the Taipei Economic and Cultural Representative Office in the United States, an instrumentality established by the Taiwan authorities; and

(3)  The terms "Party" or "Parties" refer to AIT and/or TECRO.

## Article 2

### Scope of Assistance

1.   The Parties shall provide mutual assistance through the relevant authorities of the territories they represent, in accordance with the provisions of this Agreement, in connection with the investigation, prosecution, and prevention of offenses, and in proceedings related to criminal matters.

2.   Assistance shall include:

(1)   taking the testimony or statements of persons;

(2)   providing documents, records, and articles of evidence;

(3)   locating or identifying persons;

(4)   serving documents;

(5)   transferring persons in custody for testimony or other purposes;

(6)   executing requests for searches and seizures;

(7)   assisting in proceedings related to immobilization and forfeiture of assets, restitution, or collection of fines; and

(8)   any other form of assistance not contrary to the laws of the territory represented by the Requested Party.

3.   Except as otherwise provided in this Agreement, assistance shall be provided without regard to whether the conduct that is the subject of the investigation, prosecution, or proceeding in the territory represented by the Requesting Party would constitute an offense under the laws of the territory represented by the Requested Party.

4.   This Agreement is intended solely for mutual legal assistance between the Parties. The provisions of this Agreement shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request.

## Article 3

### Designated Representatives

1.   Each Party shall designate a Designated Representative to make and receive requests pursuant to this Agreement.

2.   For AIT, the Designated Representative shall be the Attorney General of the territory represented by AIT or a person designated by the Attorney General.   For TECRO, the Designated Representative shall be the Minister of Justice of the territory represented by TECRO or a person designated by the Minister of Justice.

3.   The Designated Representatives shall communicate directly with one another for the purposes of this Agreement, except that any transfer of funds under this Agreement from one Party to the other shall be made between AIT and TECRO in accordance with the provisions of paragraphs 4 and 5.

4.   Any transfer of funds to AIT under this Agreement shall be made to AIT by TECRO in U.S. dollars.   Payments shall be sent to:

Deputy Managing Director
American Institute in Taiwan
1700 N. Moore Street, Suite 1700
Arlington, VA  22209
Telephone Number:  (703) 525-8474
Facsimile Number:  (703) 841-1385

Any transfer of funds to TECRO under this Agreement shall be made to the Coordination Council for North American Affairs by AIT in New Taiwan dollars or U.S. dollars.   Payments shall be sent to:

Secretary General
Coordination Council for North American Affairs
133 Po-Ai Road
Taipei, Taiwan 100
Telephone Number:  02-2311-6970
Facsimile Number:  02-2382-2651

5.  Any request for transfer of funds under this Agreement and any transfer of funds under this Agreement must be accompanied by supporting documentation identifying the specific activities and costs involved.

4

## Article 4

### Limitations on Assistance

1.    The Designated Representative for the Requested Party may deny assistance if:

(1)   the request relates to an offense under military law that would not be an offense under ordinary criminal law;

(2)   the execution of the request would prejudice the security, public order, or similar essential interests of the territory represented by the Requested Party;

(3)   the request is not made in conformity with the Agreement; or

(4)   the request is made pursuant to Article 15 and relates to conduct which, if committed in the territory represented by the Requested Party, would not be an offense in that territory.

2.    Before denying assistance pursuant to this Article, the Designated Representative for the Requested Party shall consult with the Designated Representative for the Requesting Party to consider whether assistance can be given subject to such conditions as it deems necessary.    If the Designated Representative for the Requesting Party accepts assistance subject to these conditions, authorities of the territory represented by it shall comply with the conditions.

3.    If the Designated Representative for the Requested Party denies assistance, it shall inform the Designated Representative for the Requesting Party of the reasons for the denial.

5

## Article 5

### Form and Contents of Requests

1.  A request for assistance shall be in writing except that the Designated Representative for the Requested Party may accept a request in another form in an emergency situation.  In any such case, the request shall be confirmed in writing within ten days thereafter unless the Designated Representative for the Requested Party agrees otherwise.  The request shall be in the language used in the territory represented by the Requested Party unless otherwise agreed.

2.  The request shall include the following:

(1)  the name of the authority conducting the investigation, prosecution, or proceeding to which the request relates;

(2)  a description of the subject matter and nature of the investigation, prosecution, or proceeding, including the specific criminal offenses that relate to the matter and any punishment that might be imposed for each offense;

(3)  a description of the evidence, information, or other assistance sought; and

(4)  a statement of the purpose for which the evidence, information, or other assistance is sought.

3.  To the extent necessary and possible, a request shall also include:

(1)  information on the identity and location of any person from whom evidence is sought;

(2)  information on the identity and location of a person to be served, that person's relationship to the proceedings, and the manner in which service is to be made;

(3)  information on the identity and whereabouts of a person to be located;

(4)  a precise description of the place or person to be searched and of the articles to be seized;

6

(5)   a description of the manner in which any testimony or statement is to be taken and recorded;

(6)   a list of questions to be asked of a witness;

(7)   a description of any particular procedure to be followed in executing the request;

(8)   information as to the allowances and expenses to which a person asked to appear in the territory represented by the Requesting Party will be entitled; and

(9)   any other information that may be brought to the attention of the Designated Representative for the Requested Party to facilitate its execution of the request.

4.   If the Designated Representative for the Requested Party considers the contents contained in the request not sufficient to enable the request to be dealt with, it may request additional information.

5.   No form of certification or authentication will be required for a request for assistance or its supporting documents.

7

## Article 6

### Execution of Requests

1.    The Designated Representative for the Requested Party shall promptly execute the request or, when appropriate, shall transmit it to the relevant authority for execution.    The competent authorities of the territory represented by the Requested Party shall do everything in their power to execute the request.

2.    The Designated Representative for the Requested Party shall make all necessary arrangements for and meet the costs of the representation of the Requesting Party in the territory represented by the Requested Party in any proceedings arising out of a request for assistance.

3.    Requests shall be executed in accordance with the procedures provided for by the laws of the territory represented by the Requested Party.  The method of execution specified in the request shall be followed except insofar as it is contrary to the laws of the territory represented by the Requested Party.

4.    If the Designated Representative for the Requested Party determines that execution of a request would interfere with an ongoing criminal investigation, prosecution, or proceeding in the territory represented by the Requested Party, it may postpone execution, or make execution subject to conditions determined necessary after consultations with the Designated Representative for the Requesting Party.  If the Designated Representative for the Requesting Party accepts the assistance subject to the conditions, authorities in the territory represented by it shall comply with the conditions.

5.    The relevant authorities of the territory represented by the Designated Representative for the Requested Party shall use their best efforts to keep confidential a request and its contents if such confidentiality is requested by the Designated Representative for the Requesting Party. If the request cannot be executed without breaching such confidentiality, the Designated Representative for the Requested Party shall so inform the Designated Representative for the Requesting Party, which shall then determine whether the request should nevertheless be executed.

6.    The Designated Representative for the Requested Party shall respond to reasonable inquiries by the Designated Representative for the Requesting Party on progress toward execution of the request.

7.    The Designated Representative for the Requested Party shall promptly inform the Designated Representative for the Requesting Party of the outcome of the execution of the request. If the request is denied, the Designated Representative for the Requested Party shall inform the Designated Representative for the Requesting Party of the reasons for the denial.

## Article 7

### Costs

1.    The authorities of the territory represented by the Requested Party shall pay the costs relating to the execution of the request, but the authorities of the territory represented by the Requesting Party shall bear:

> (1)    the allowances or expenses for the travel of persons under Articles 11 and 12 of this Agreement in accordance with the regulations of the territory represented by the Requesting Party;

> (2)    the allowances or expenses for persons to travel to and from and stay in the territory represented by the Requested Party under Article 9(3) of this Agreement;

> (3)    the expenses and fees of experts; and

> (4)    the costs of translation, interpretation, and transcription.

2.    If it becomes apparent that the execution of the request requires expenses of an extraordinary nature, the Designated Representatives for the Parties shall consult to determine the terms and conditions under which the request can be executed.

10

# Article 8

## Limitations on Use

1.    The Designated Representative for the Requested Party may request that the authorities of the territory represented by the Requesting Party not use any information or evidence obtained under this Agreement in any investigation, prosecution, or proceeding other than that described in the request without the prior consent of the Designated Representative for the Requested Party.    In such cases, the authorities of the territory represented by the Requesting Party shall comply with the conditions.

2.    The Designated Representative for the Requested Party may request that information or evidence furnished under this Agreement be kept confidential or be used only subject to terms and conditions it may specify.    If the Designated Representative for the Requesting Party accepts the information or evidence subject to such conditions, the relevant authorities of the territory represented by the Requesting Party shall use their best efforts to comply with the conditions.

3.    Nothing in this Article shall preclude the use or disclosure of information to the extent that there is an obligation to do so for the territory represented by AIT under that territory's Constitution or for the territory represented by TECRO under that territory's Constitution or law in a criminal prosecution.    The Designated Representative for the Requesting Party shall notify the Designated Representative for the Requested Party in advance of any such proposed disclosure.

4.    Information or evidence that has been made public in the territory represented by the Requesting Party in accordance with paragraphs 1, 2, or 3 may thereafter be used for any purpose.

11

## Article 9

### Testimony or Evidence in the Territory
### Represented by the Requested Party

1.    A person in the territory represented by the Requested Party from whom evidence is requested pursuant to this Agreement shall be compelled, if necessary, to appear and testify or produce items, including documents, records, and articles of evidence.    A person who gives false testimony, either orally or in writing, in execution of a request, shall be subject to prosecution and punishment in the territory represented by the Requested Party in accordance with the criminal laws of that territory.

2.    Upon request, the Designated Representative for the Requested Party shall furnish information in advance about the date and place of the taking of the testimony or evidence pursuant to this Article.

3.    The authorities of the territory represented by the Requested Party shall permit the presence of such persons as specified in the request during the execution of the request, and shall allow such persons to pose questions to the person giving the testimony or evidence and to make a verbatim transcript in a manner agreed to by the authorities of the territory represented by the Requested Party.

4.    If the person referred to in paragraph 1 asserts a claim of immunity, incapacity, or privilege under the laws of the territory represented by the Requesting Party, the evidence, including all items requested, shall nonetheless be taken and the claim made known to the Designated Representative for the Requesting Party for resolution by the authorities of that territory.

5.    Evidence produced in the territory represented by the Requested Party pursuant to this Article or that is the subject of testimony taken under this Article may be authenticated by a declaration, including, in the case of business records, authentication in the manner indicated in Form A appended to this Agreement.    Documents authenticated by Form A shall be admissible in evidence in courts in the territory represented by the Requesting Party.

12

## Article 10

### Records of the Territories Represented by the Parties

1.   The Designated Representative for the Requested Party shall provide the Designated Representative for the Requesting Party with copies of publicly available records, including documents or information in any form, in the possession of departments and agencies of the authorities of the territory represented by the Requested Party.

2.   The Designated Representative for the Requested Party may provide copies of any documents, records, or information which are in the possession of a department or agency of the authorities of the territory represented by that Party, but which are not publicly available, to the same extent and under the same conditions as such copies would be available to the law enforcement or judicial authorities of the territory represented by the Requested Party.   The Designated Representative for the Requested Party may in its discretion deny a request pursuant to this paragraph entirely or in part.

3.   Records produced pursuant to this Article may be authenticated by the person in charge of maintaining them through the use of Form B appended to this Agreement.   No further authentication shall be necessary.   Documents authenticated under this paragraph shall be admissible in evidence in courts in the territory represented by the Requesting Party.

## Article 11

### Transfer of Persons in Custody

1.    A person in the custody of the authorities of the territory represented by the Requested Party whose presence in the territory represented by the Requesting Party is sought for purposes of assistance under this Agreement may be transferred from the territory represented by the Requested Party to the territory represented by the Requesting Party for that purpose if the person consents and if the Designated Representatives for both Parties agree.

2.    A person in the custody of the authorities of the territory represented by the Requesting Party whose presence in the territory represented by the Requested Party is sought for purposes of assistance under this Agreement may be transferred from the territory represented by the Requesting Party to the territory represented by the Requested Party if the person consents and if the Designated Representatives for both Parties agree.

3.    For purposes of this Article:

    (1)    the authorities of the territory represented by the receiving Party shall have the authority and the obligation to keep the person transferred in custody unless otherwise authorized by the authorities of the territory represented by the sending Party;

    (2)    the authorities of the territory represented by the receiving Party shall return the person transferred to custody in the territory represented by the sending Party within 30 days of the transfer or as soon as circumstances permit or as otherwise agreed by both Designated Representatives;

    (3)    the authorities of the territory represented by the receiving Party shall not require the authorities of the territory represented by the sending Party to initiate extradition proceedings for the return of the person transferred; and

14

(4)   the person transferred shall receive credit for service of the sentence imposed in the territory represented by the sending Party for time served in custody in the territory represented by the receiving Party.

## Article 12

### Testimony in the Territory
### Represented by the Requesting Party

1.    When the Designated Representative for the Requesting
Party requests the appearance of a person in the territory
represented by the Requesting Party, the Designated Representative
for the Requested Party shall invite the person to appear before
the appropriate authority in the territory represented by the
Requesting Party.    The Designated Representative for the
Requesting Party shall indicate the extent to which the expenses
will be paid.    The Designated Representative for the Requested
Party shall promptly inform the Designated Representative for the
Requesting Party of the response of the person.

2.    The Designated Representative for the Requested Party
may request the Designated Representative for the Requesting
Party to make a commitment that a person who has been asked to be
present in the territory represented by the Requesting Party
according to this Article not be prosecuted, detained, subject to
service of process, or subject to any other restriction of
personal liberty, for any acts or omissions or convictions which
preceded such person's entry into the territory represented by
the Requesting Party, and that such person shall not be obliged
to give evidence or assist in any investigation, prosecution, or
proceeding other than that to which the request relates, except
with the prior consent of the Designated Representative for the
Requested Party and such person.    The person whose presence is
requested may decline to comply with the request if the
Designated Representative for the Requesting Party does not grant
such assurances.

3.    The safe conduct provided for by this Article shall
cease seven days after the Designated Representative for the
Requesting Party has notified the Designated Representative for
the Requested Party that the person's presence is no longer
required, or when the person, having left the territory
represented by the Requesting Party, voluntarily returns.    The
Designated Representative for the Requesting Party may, in its
discretion, extend this period up to fifteen days if it determines
that there is good cause to do so.

16

## Article 13

### Location or Identification of Persons or Items

If the Designated Representative for the Requesting Party seeks the location or identity of persons or items in the territory represented by the Requested Party, the authorities of the territory represented by the Requested Party shall use their best efforts to ascertain the location or identity.

## Article 14

### Service of Documents

1.   The authorities of the territory represented by the Requested Party shall use their best efforts to effect service of any document relating, in whole or in part, to any request for assistance made by the Designated Representative for the Requesting Party under the provisions of this Agreement.

2.   The Designated Representative for the Requesting Party shall transmit any request for the service of a document requiring the appearance of a person before an authority in the territory represented by the Requesting Party a reasonable time before the scheduled appearance.

3.   The Designated Representative for the Requested Party shall return a proof of service in the manner specified in the request.

## Article 15

### Search and Seizure

1.   The Designated Representative for the Requested Party shall obtain the execution of a request for the search, seizure, and delivery of any item to the Designated Representative for the Requesting Party if the request includes the information justifying such action under the laws of the territory represented by the Requested Party.

2.   Upon request, every person who has custody of a seized item shall certify, through the use of Form C appended to this Agreement, the continuity of custody, the identity of the item, and the integrity of its condition.   No further certification shall be required.   The certificate shall be admissible in evidence in courts in the territory represented by the Requesting Party.

3.   The Designated Representative for the Requested Party may require that the Designated Representative for the Requesting Party agree to the terms and conditions deemed necessary to protect third party interests in the item to be transferred.

## Article 16

### Return of Items

The Designated Representative for the Requested Party may require that the Designated Representative for the Requesting Party return any items, including documents, records, or articles of evidence, furnished to it in execution of a request under this Agreement as soon as possible.

## Article 17

### Assistance in Forfeiture Proceedings

1.   If the Designated Representative for one Party becomes aware of proceeds or instrumentalities of offenses which are located in the territory represented by the other Party and may be forfeitable or otherwise subject to seizure under the laws of the territory represented by that Party, it may so inform the Designated Representative for the other Party.   If the relevant authorities of the territory represented by that other Party have the necessary authority over forfeiture or seizure, the Designated Representative for that other Party may present this information to the authorities of the territory represented by that Party for a determination whether any action is appropriate.   These authorities shall issue their decision in accordance with the laws of their territory, and shall, through their Designated Representative, report to the Designated Representative for the other Party on the action taken.

2.   The Designated Representatives for the Parties shall assist each other to the extent permitted by the respective laws of the territories represented by them in proceedings relating to the forfeiture of the proceeds and instrumentalities of offenses, restitution to the victims of crime, and the collection of fines imposed as sentences in criminal prosecutions.   This may include action to immobilize temporarily the proceeds or instrumentalities pending further proceedings.

3.   Proceeds or instrumentalities of offenses shall be disposed of in accordance with the laws of the territories represented by the Parties.   Either Party may transfer all or part of such assets, or the proceeds of their sale, to the other Party, to the extent permitted by the laws of the territory represented by the transferring Party and upon such terms as it deems appropriate.

## Article 18

### Compatibility with Other Agreements

Assistance and procedures set forth in this Agreement shall not prevent either of the Parties or their Designated Representatives from granting assistance to the other Party through the provisions of other applicable agreements, or through the provisions of the laws applicable in the territory represented by it.  The Parties may also provide assistance pursuant to any arrangement, agreement, or practice which may be applicable.

## Article 19

### Consultation

The Designated Representatives for the Parties shall consult, at times mutually agreed to by them, to promote the most effective use of this Agreement.   The Designated Representatives may also agree on such practical measures as may be necessary to facilitate the implementation of this Agreement.

## Article 20

### Entry into Force; Termination

1. This Agreement shall enter into force on the date of the final signature hereafter.

2. Either Party may terminate this Agreement by means of written notice to the other Party. Termination shall take effect six months following the date of receipt of such notification.

3. This Agreement applies to any request presented after its entry into force even if the relevant offenses occurred before this Agreement enters into force.

IN WITNESS WHEREOF, the undersigned, being duly authorized thereto, have signed this Agreement.

DONE at _Washington, D.C_ in duplicate, in the English and Chinese languages, both texts being equally authentic, this _26th_ day of the _March_ month of the year two thousand and two.

FOR THE AMERICAN
INSTITUTE IN TAIWAN:

NAME: _Richard C. Bush_

TITLE: _Chairman_

DATE: _26 March 2002_

FOR THE TAIPEI ECONOMIC AND
CULTURAL REPRESENTATIVE OFFICE IN
THE UNITED STATES:

NAME: _程建人_

TITLE: _REPRESENTATIVE_

DATE: _MARCH 26, 2002_

24

**Form A**
**CERTIFICATE OF AUTHENTICITY OF BUSINESS RECORDS**

I, _____[name]_____, declare on penalty of criminal punishment for false

statement or declaration that I am employed by _____[name of business from which documents are

sought]_____ and that my title is _____[title]_____. I further state that each of

the records attached hereto is the original or a duplicate of the original record in the

custody of _____[name of business from which documents are sought]_____.

I further state that:

A)   such records were made, at or near the time of the occurrence of the
matters set forth, by (or from information transmitted by) a person with
knowledge of those matters;

B)   such records were kept in the course of a regularly conducted business
activity;

C)   the business activity made such records as a regular practice; and

D)   if any such record is not the original, it is a duplicate of the original.

_____[signature]_____   _____[date]_____

Sworn to or affirmed orally before me, _____[name]_____, a judicial officer,

this _____ day of _____, 20____.

**Form B**

## CERTIFICATE OF AUTHENTICITY OF FOREIGN PUBLIC DOCUMENTS

I, _____*[name]*_____ , declare on penalty of criminal punishment for false

statement or declaration that my position with the Authority of _____*[territory]*_____ is __

_____*[title]*_____ and that in that position I am authorized by the law of _____

*[territory]*_____ to declare that the documents attached and described below are true and

accurate copies of original records which are recorded or filed in _____*[name of office or*

*agency]*_____ , which is an office or agency of _____*[territory]*_____ .

Description of Documents:

_____*[signature]*_____

_____*[title]*_____

_____*[date]*_____

## Form C

## CERTIFICATE WITH RESPECT TO SEIZED ARTICLES

I, _____ [name] _____, declare on penalty of criminal punishment for false

statement or declaration that my position with the Authority of _____ [territory] _____ is __

_____ [title] _____. I received custody of the articles listed below from _____

[name of person] _____ on _____ [date] _____, at _____ [place] _____ in the

same condition as when I received them (or, if different, as noted below).

Description of Articles:

Changes in condition while in my custody:

_____ [signature] _____

_____ [title] _____

_____ [place] _____

_____ [date] _____

**Seal**

RECEIVED

JUL 2 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE: ALL ASSETS HELD FOR THE               )
BENEFIT OF AMAZING ASIA                      )
MANAGEMENT LIMITED, PO-HSIEN LU,             )
CHIU-FENG HSU, AND TSUNG-CHE HSU IN )
ACCOUNTS NOS. 626003095, 6268007634,         )       Misc. No.
6268007635, 6268007636, 6268007637,          )
6268007638, 6268007672, 6268007673,          )
6268007694, 6268007731, 6268007762 AT FAR    )
EAST NATIONAL BANK, LOS ANGELES,             )
CALIFORNIA                                   )
_____)

Case: 1:08-mc-00491
Assigned To : Kennedy, Henry H.
Assign. Date : 7/28/2008
Description: Miscellaneous

## RESTRAINING ORDER

WHEREAS, this matter having come before this Court on the *ex parte* application of the

United States of America for a restraining order pursuant to 28 U.S.C. §§ 2467(d)(3)(A),

(d)(3)(B)(ii) and 18 U.S.C. § 983(j), which provides this Court with jurisdiction to enter

restraining orders and take such other action as may be necessary to preserve any property subject

to forfeiture in a foreign proceeding to ensure its availability for forfeiture;

WHEREAS, pursuant to 28 U.S.C. § 2467(c)(2)(B), venue is proper in this Court for the

registration and enforcement of foreign restraining orders affecting property that is the subject of

foreign forfeiture proceedings;

WHEREAS, on July 11, 2008, the Taiwanese Public Prosecutor issued the restraining

order against Amazing Asia Management Limited ("Amazing Asia") and Tsung-Che Hsu's

("Hsu") assets including eleven accounts at a financial institution in the United States

(hereinafter the "Taiwanese Restraining Order");

WHEREAS, the violation of foreign law giving rise to forfeiture in Taiwan would

constitute violations or offenses that would give rise to forfeiture under United States law if

committed in United States;

WHEREAS, the Acting Assistant Attorney General of the Criminal Division of the

United States Department of Justice, being duly authorized, has certified that it is in the interest

of justice to enforce the Taiwanese Restraining Order;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED,

PURSUANT TO 28 U.S.C. § 2467(d)(3)(A) and (d)(3)(B)(ii) THAT:

1.    The restraining order issued by the Taiwanese Public Prosecutor, dated July 11,

2008, attached hereto with a English translation, shall hereby be given effect.

2.    Effective immediately, all monies, assets, and other things of value held in the

following accounts (the "Property") are hereby RESTRAINED:

      a.    All assets held for the benefit of Amazing Asia Management Limited, Po-
Hsien Lu, Chiu-Feng Hsu, or Tsung-Che Hsu in Account Nos. 626003095,
6268007634, 6268007635, 6268007636, 6268007637, 6268007638,
6268007672, 6268007673, 6268007694, 6268007731, 6268007762 at Far
East National Bank, Los Angeles.

3.    All persons and entities, including Amazing Asia Management Limited, Tsung-

Che Hsu, Chiu-Feng Hsu, Po-Hsien Lu, their agents, servants, employees, attorneys, family

members, those persons in active concert or participation with Lu, Hsu or the corporate entities,

and anyone in possession of or holding any interest in the Property, be and are hereby

ENJOINED AND RESTRAINED from withdrawing, transferring, selling, assigning, pledging,

distributing, giving away, encumbering, wasting, secreting or otherwise participating in the

disposal, removal or alienation by any means of any interest, direct or indirect, in the Property,

without prior approval of the Court upon notice to the United States and an opportunity for the

United States to be heard, except as specified in this Order and provided that, in accordance with

28 U.S.C. § 2467(d)(3)(C), no person may object to this Order on the grounds that it is the subject of parallel litigation involving the same Property pending in a foreign court.

4.    The financial institutions holding the Property shall continue to receive and credit monies, deposits, interest, dividends, or other things of value to the account identified above, which additional assets shall be subject to this Order and restrained pursuant to its terms. Upon receiving notice of this Order, the affected financial institutions shall disclose to the United States the exact amount on deposit and the approximate market value and makeup of any assets not held in currency at the time the assets are frozen pursuant to this Order, shall hereafter provide to the United States a monthly statement of the accounts, and shall promptly respond to requests by the United States for information concerning the accounts at any time thereafter for as long as this Order remains in place.

5.    The United States, may serve a copy of the this Order on the affected financial institutions by facsimile, and, pursuant to Rule 4(f) of the Federal Rules of Civil Procedure or other applicable law, shall seek to provide a copy of the Court's Order to identifiable persons holding a legal interest in the Property, including: Amazing Asia Management Limited, Po-Hsien Lu, Chiu-Feng Hsu and Tsung-Che Hsu.

6.    The terms of this Restraining Order shall remain in full force and effect until further order of this Court.

Dated this _____ day of July, 2008.

_____
UNITED STATES DISTRICT JUDGE
United States District Court for the
District of Columbia

宙股

## 臺灣嘉義地方法院檢察署檢察官扣押命令

97年度他字第994號

被　　　告　AMAZING ASIA MANAGEMENT LTD

設臺中市西區五權西4街27號11F之2

代　表　人
兼　被　告　盧伯賢　男　49歲（民國48年3月25日生）

籍設高雄縣大寮鄉大明街104號

現住臺中市西區五權西4街27號11F之
2（現於臺灣高雄第二監獄執行中）

身分證統一編號：Q120281005號

許秋鳳　女　44歲（民國52年10月15日生）

籍設臺中市南屯區萬和路1段33號之6

現住臺中市西區五權西4街27號11F之

身分證統一編號：Q221181122號

許聰哲　男　40歲（民國56年9月11日生）

住嘉義縣新港鄉中庄村18鄰中庄160
巷34號（通緝中）

身分證統一編號：Q121181488號

一、被告盧伯賢因犯賭博罪，經臺灣高等法院臺南分院以96年度
上易字第619號判決判處有期徒刑4年，減為有期徒刑2年，
並於刑之執行完畢或赦免後，令入勞動場所強制工作3年；
被告許聰哲因賭博案件，經臺灣嘉義地方法院通緝中；盧冠
廷因犯賭博罪，經臺灣高等法院臺南分院以96年度上易字第
619號判決判處有期徒刑1年，減為有期徒刑6月，被告盧伯
賢犯罪所得美金1億8,879萬6,835.77元應與被告許聰哲及盧
冠廷等人連帶沒收。

二、被告盧伯賢、許秋鳳及許聰哲共同開設AMAZING ASIA MANAG
EMENT LTD，該公司在BANK SINOPAC HONG KONG BRANCH、
CHINATRUST COMMERCIAL BANK,LTD HONG KONG BRANCH等銀行
之存款，業經臺灣高等法院臺南分院以上開判決認定為被告

盧伯賢之犯罪所得，應與被告許聰哲及盧冠廷等人連帶沒收。

三、上列被告AMAZING ASIA MANAGEMENT LTD、盧伯賢、許秋鳳及許聰哲等在Far East National Bank帳戶內之存款（Account Number：626003095、6268007634～6268007638、6268007672、6268007673、6268007694、6268007731、6268007762），疑為被告盧伯賢之犯罪所得，依刑事訴訟法第133條第1項規定，應予扣押之。

中　華　民　國　97　年　7　月　11　日

檢　察　官　王　輝　興

Seizure Order

Issued by: Taiwan Chiayi District Prosecutors Office
Date: July 11, 2008
Case No.: 97-Ta-994

Defendant:
**AMAZING ASIA MANAGEMENT LTD**
Domicile: 11F-2, No. 27, Wu Chuan 4th Street, West Area, Taichung

Representatives and Defendants:
**Lu, Po-Hsien**
Male, 49 years old (Date of Birth: March 25, 1959)
Domicile: No. 104, Ta-Ming Street, Ta Liao County, Kaohsiung
Residence: 11F-2, No. 27, Wu Chuan 4th Street, West District, Taichung (He is
serving his time in Kaohsiung 2nd Prison)
ID No. Q120281005

**Hsu, Chiu-Feng**
Female, 44 years old (Date of Birth: October 15, 1963)
Domicile: No. 33-6, Section 1, Wan-Ho Road, Nan-Tun District, Taichung
Residence: 11F-2, No. 27, Wu Chuan 4th Street, West District, Taichung
ID No.: Q221181122

**Hsu, Tsung-Che**
Male, 40 years old (Date of Birth: September 1, 1967)
Domicile: No. 34, Lane 160, Chung-Chuang, Hsin Kang County, Chiayi
(wanted)
ID No.: Q121181488

1.   The defendant Lu, Po-Hsien is sentenced to 4 years imprisonment for
     gambling offence, which is deducted 2 years in accordance with the Act
     on Sentence Reduction, and shall be committed to a labor establishment
     to perform compulsory labor for three years after serving his time in jail per
     Judgment No. 96-Shang-Yi-619 by the Taiwan High Court, Tainan Branch.
     The defendant Hsu, Tsung-Che is currently on the wanted list of the
     ChiaYi District Court. Lu, Kuang-Ting, the nephew of Lu, Po-Hsien is
     sentenced to one year imprisonment which is deducted 6 months in

accordance with the Act on Sentence Reduction per the same judgment. The proceeds of crime of Lu, Po-Hsien amounts to USD0.1 billion 88 million 790 thousand and 6 thousand 8 hundred and thirty-five dollars 77 cents should be confiscated jointly with the assets of Hsu Tsung-Che and Lu, Kuang-Ting.

2.  The defendants, Lu, Po-Hsien, Hsu. Chiu-Feng and Hsu, Tsung-Che are the co-founders of Amazing Asia Management Limited. The deposit of the said company in Bank Sinopac, Hong Kong Branch, Chinatrust Bank Ltd, Hong Kong Branch are considered the proceeds of crime per the same judgment and should be confiscated jointly with Hsu, Tsung-Che and Lu, Kuang-Ting.

3.  It is highly suspected that the deposit of the defendants Amazing Asia Management Ltd., Lu, Po-Hsien, Hsu Chiu-Feng and Hsu Tsung-Che in the Far East National Banks (Account numbers: 626003095, 6268007634~6268007638, 6268007672, 6268007673, 6268007694, 6268007731 and 6268007762) is the proceeds of crime derived from Lu, Po-Hsien's gambling offense. Accordingly, the above-mentioned accounts should be seized in accordance with Article 133, Section 1 of the Code of Criminal Procedure of the Republic of China.

Prosecutor: Wang Hui-Hsing
Seal of the Taiwan ChiaYi District Prosecutors Office